# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT S. KAMINSKI, TRUSTEE OF THE, ROBERT S. KAMINSKI REVOCABLE TRUST, | ) ) ) |
| Plaintiff, | ) No. 10 C 4322 ) |
| v. | ) Magistrate Judge Jeffrey Cole ) |
| THOMAS J. WIENS and TRANSNET CAPITAL CORPORATION, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff has filed a motion asking the court to reinstate this case and enter the judgments the parties agreed to as a part of the settlement they entered into as part of final judgment the court entered May 1, 2012.[1] The parties' dispute arose out of a $1.1 million loan the plaintiff made to defendant, Transnet Capital Corporation, and which defendant, Thomas Wiens, guaranteed. As it turned out, as the defendants admitted in their answer to the Complaint, only a single interest payment was ever made, and the entirety of the principal was outstanding well over a decade after the note matured. [Dkt. #12, ¶21]. I conducted a settlement conference with the parties beginning in October of 2011 and continuing, off and on, through May 2012, when a settlement was ultimately finalized. [Dkt. #59, #61, #64, ##66-76]. Under the terms of the settlement agreement the parties reached, defendants were required to make, by October 13, 2013, interim payments totaling $175,000 ($100,000 by December 13, 2011, $50,000 by October 13, 2012, and $25,000 by October 13, 2013), and a final payment of $925,000 on or before July 31, 2015.

---

[1] The parties consented to my jurisdiction on 10/14/11. [Dkt. #59].

I dismissed the case without prejudice and at the parties' express request, retained jurisdiction to enforce the terms of the settlement agreement and, if necessary, enter the appropriate judgments. *See Jones v. Ass'n of Flight Attendants CWA*, 778 F.3d 571, 573 (7th Cir. 2015)(noting that a court may retain jurisdiction to enforce a settlement where it has dismissed a case without prejudice). The parties agreed that, in the event of any default:

> the Trust may reinstate the Lawsuit pursuant to the district court's retention of jurisdiction, file and record the Judgments, and pursue collection of the amount provided for in the Judgments through any lawful means.

[Dkt. ## 76, 77]. As part of the parties' settlement agreement, the defendants provided signed originals of the final judgments they agreed would be entered upon any default. The Agreed Final Judgments are to be entered in the amount of (a) $1,450,000.00 plus simple interest at the rate of 10% per annum on the sum of (i) $350,000 plus (ii) the unpaid balance of the Principal Amount outstanding from time to time after January 1, 2010, minus the $175,000 paid by Defendants under the Settlement Agreement. [Dkt. #77-1, #77-2]. As of August 1, 2016, the total amount of the Agreed Final Judgments is equal to $2,157,260.27, plus per diem interest of $349.32 for each day after August 1, 2016.

There is no dispute that the defendants defaulted on their obligations under the settlement agreement. While they made the required interim payments on or about the dates they were due, they have not made the final payment of $925,000, despite that amount now being more than a full year past due (not to mention the repayment of principal under the original loan now being almost 16 years late). Accordingly, there appears to be no reason not to reinstate this case and enter the judgments to which the defendants agreed.

But, despite their agreement to this consequence as a result of their default under the terms

of their settlement agreement, the defendants submit that, to follow through on that agreement's terms and enter the judgments against them would somehow "frustrate the entire purpose of the Settlement Agreement" because defendant Thomas Wiens tried, in good faith, to comply with the terms of the settlement agreement but simply did not have the liquid assets necessary to pay the judgment amounts they agreed to. [Dkt. ##81 at 1, 83-1, at 1-2]. Instead, Mr. Wiens thinks the better route is to scrap the terms of the settlement agreement and have *another* mediation. Otherwise, he says, the result will simply be non-performance on his part. [Dkt. #83-1, at 2]. If Mr. Wien is correct, the enforceability of settlement agreements is largely at an end.

The importance of settlements in the federal court system cannot be overestimated. *See generally Marek v. Chesny*, 473 U.S. 1 (1985); *United States v. Dawson*, 425 F.3d 389 (7th Cir. 2005)(Posner, J.)("[M]ost cases ... are settled rather than tried . . . .").[2] They save the parties and the taxpayers untold expenses should litigation proceed. As such, the federal policy of enforcing settlement agreements is vitally important, *Baseload Energy, Inc. v. Roberts*, 619 F.3d 1357 (Fed. Cir. 2010), and cannot be undone because a party had a change of heart.

The terms of a settlement agreement are interpreted and enforced just as any contract would be, *In re Motorola Sec. Litig.*, 644 F.3d 511, 517 (7th Cir. 2011), and cannot be undone because one of the parties seeks to avoid the consequences of the settlement agreement to which he knowingly chose to enter. *Taylor v. Gordon Flesch Co. Inc.*, 793 F.2d 858, 863 (7th Cir.1986).[3]

---

[2] *See also Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 995 (7th Cir.2001); *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465 (6th Cir. 2007).

[3] A settlement agreement, whether oral or written, is a contract, and thus its construction and enforcement are governed by basic contract principles, *Laserage Tech. Corp. v. Laserage Laboratories Inc.*, 972 F.2d 799, 802 (7th Cir.1992), the most fundamental of which is that "'the primary object in construing
(continued...)

3

In Illinois we follow the objective theory of intent. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016); *Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008). "'Secret hopes and wishes count for nothing. The status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves.'" *Id.* (quoting *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 814–15 (7th Cir.1987)). Here, the defendants' present wishes are that the express terms of the settlement agreement be ignored, and that they be given a third chance to make good – or at least try to – on a loan obligation they defaulted on a decade and a half ago. But, the terms that the parties agreed to are straightforward, and the objections that the defendants now raise to following through on those agreed terms are either unfounded, undeveloped, or put out of view the terms of the parties' agreed to settlement agreement, which, in Illinois as elsewhere, cannot be judicially rewritten because one of the settling parties desires it.[4]

The defendants' seven paragraph response brief cites not a single case and points to no provisions of the parties' settlement agreement that support their position. The Seventh Circuit has said, time and time again, that the kinds of undeveloped and skeletal contentions like those in the

---

[3](...continued)
a contract is to give effect to the intention of the parties involved.'" *In re Doyle*, 144 Ill.2d 451, 468, 581 N.E.2d 669 (1991). An agreement is binding if the parties agree on all material terms. *Abbott Laboratories v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir.1999); *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill.2d 306, 313–314 (1987). The essential terms must be "definite and certain" so that a court can ascertain the parties' agreement from the stated terms and provisions.

[4]Although it is a handy shorthand phrase often used in opinions, the words "meeting of the minds," is misleading if taken literally. *See Laserage Technology Corp.*, 972 F.2d at 802. Today, there is no debate that the formation of a contract does not actually require that the parties come to a subjective and congruent understanding. There is common agreement that "no one will understand the true theory of contract or be able to discuss some fundamental questions intelligently until he has understood that all contracts are formal, that the making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs not on the parties having meant the same thing but on their having said the same thing." Holmes, The Path of the Law, 10 Harv.L.Rev. 457, 464 (1897).

defendants' response brief are deemed waived. *St. John v. Cach, LLC*, 822 F.3d 388, 392 (7th Cir. 2016); *Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011); *Mahaffey v. Ramos,* 588 F.3d 1142, 1146 (7th Cir.2009);*United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991).

Mr. Wiens may be right that the entry of the judgments to which the defendants agreed will simply lead to non-performance of further payment; but this is exactly the scenario the settlement agreement addressed in the clearest of terms. The parties were fully aware of the possibility of default and provided for it. The purpose of the settlement agreement would not then be "frustrated" in any respect that the law countenances by the entry of the agreed judgments. Indeed, their entry is the exact thing the parties envisioned happening upon the defendants' default. Could plaintiff do better by going back to the drawing board with the defendants and setting up yet another payment plan? Perhaps, but it doesn't seem likely, especially given the defendants' track record. And more importantly, the defendants' alternative course of action would make a mockery out of the importance and sanctity of federal settlement agreements and of contracts generally. Defendants are already over a year behind on the payment due under the settlement agreement, 16 years behind on the original loan and note, and the defendants give no indication they will do any better the next time around. All they say is they have no liquid assets sufficient now to pay the agreed judgment amounts. That is not legally sufficient to scrap the conditions the defendants agreed to and give them a third chance hopefully to make good on their financial obligations. But, in any event, the plaintiff has every right to demand the entry of the agreed judgments, which is the exact relief the parties bargained for and to which they agreed.

The defendants have some additional objections to living up to the terms of their settlement agreement. These objections begin with the total amount of the judgment – $2,157,260.27 – that the plaintiff seeks to have entered. The problem for the defendants is the calculation of interest and the plaintiff's delay in seeking this reinstatement because the plaintiff waited about a year after the $925,000 payment was due before bringing this motion. [Dkt. #83-1, at 3]. But, the defendants ignore the provisions of the settlement agreement; provisions they agreed to. They specifically *waived* any objections based on the plaintiff's diligence in collection proceedings or presentation of notice of default. [Dkt. #77-3, at 11, ¶ 19(b)].

Defendants also complain that the plaintiffs failed to explain how they calculated interest to reach the final judgment amount of $2,157,260.27. [Dkt. #83-1, at 2]. But, the judgments the defendants agreed to made clear that interest would be calculated at the "simple interest rate of 10% per annum on the sum of (i) $350,000 plus (ii) the unpaid balance of the Principal Amount outstanding from time to time after January 1, 2010" with a setoff for the $175,000 the defendants actually paid. [Dkt. #77, at 3; #77-1, #77-2, #77-3, at 7, ¶12]. The defendants balk at interest being calculated from January 1, 2010, but that is exactly what the agreement calls for. Indeed, the very provision the defendants cite in their response says exactly that:

> Upon the occurrence of any Event of Default, the Wiens Parties will be liable to the Trust for the balance of the Principal Amount unpaid as of the date of the Event of Default, plus (i) any other amounts that may be or become due hereunder, (ii) the amount of $350,000, reflecting the parties' reasonable estimate of the fees and costs incurred by the Trust in pursuit of the Lawsuit and a portion of the pre- judgment interest due to the Trust that accrued prior to 2010, all of which the Trust has agreed to compromise in the settlement of this matter, contingent upon the Wiens Parties' full performance of the Settlement Obligations, and (iii) **simple interest at the rate of 10% per annum** on the sum of (x) $350,000 plus (y) the unpaid balance of the Principal Amount outstanding from time to time **after January 1, 2010** and through and including the date of entry of a judgment pursuant to Section 29 of this Agreement or otherwise.

[Dkt. #77-3, at 7, ¶12 ("Event of Default" (emphasis supplied))(cited at Dkt. #83-1, at 4)].

The defendants' attorney participated in the formulation of the interest provision in open court and agreed to this very method of calculation and the start date of January 10, 2010. [Dkt. #87-3, at 4-5]. The defendants seem to forget that, while they have only been in default on the obligations they agreed to as a part of the settlement of this case for a year, they have been in default on the loan and guarantee for far longer. It certainly could have been much worse, as their original obligation came due in 2000 and the interest rate was not 10%, but 14% [Dkt. #87-2, at 2], but the plaintiff compromised. That's the nature of settlement; neither side gets exactly what it wants. *Alliance for Water Efficiency v. Fryer*, 808 F.3d 1153, 1157 (7th Cir. 2015).

Beyond that, it's unclear what more explanation the defendants need, especially given the skeletal nature of their amended response brief. The plaintiff provided them with a printout of the interest calculation on August 23, 2016 [Dkt. #87-1], two days before the defendants filed their amended response brief. And, again, the manner of calculating interest is made clear in the parties' agreement. The defendants do not question the plaintiff's math in that amended response brief. If there were some more specific problem with the interest calculation, it was up to the defendants to explain what it was in their response brief beyond an unamplified objection. *See Dal Pozzo v. Basic Mach.* Co., 463 F.3d 609, 613 (7th Cir. 2006)("An advocate's job is to make it easy for the court to rule in his client's favor . . . .").

The defendants also object that the plaintiff fails to indicate whether it liquidated any Unitech or Colorado Rare Earth shares or used them to mitigate the balance owed. [Dkt. #83-1, at 3]. Defendants offer no explanation for this objection, and there is no citation to any provision of the parties' settlement agreement. As it is completely undeveloped, this "argument" is deemed waived.

7

*United States v. Collins*, 796 F.3d 829, 836 (7th Cir. 2015)(". . . this Court has long warned that 'perfunctory and undeveloped arguments' are deemed waived."). Even so, the plaintiff points out that the parties' settlement agreement referenced only Unitech shares, which the plaintiff addressed with a declaration attached to his motion that he had not sold any such shares [Dkt. #77-4] – an exhibit, and a fact, that defendants ignore. And, to tie things up, despite the defendants' lack of any support for their objection, plaintiff declares the same thing in regard to Colorado Rare Earth shares. [Dkt. #87-4].

Finally, the defendants object to an entry of a separate judgment against both of them. But, again, this is clearly what the defendants agreed to, and the defendants' argument is undeveloped and unsupported by any citation to pertinent authority or the record. *See Beverly v. Abbott Labs*., 817 F.3d 328, 334 (7th Cir. 2016)(forfeiture of argument where party failed to cite a single case or explain its position in any depth). Both Mr. Wiens and the borrower, Transnet, agreed to execute an original of the Agreed Final Judgments. [Dkt. #77-3, at 16, ¶29(b)]. The parties' agreement also provided for the "entry of one or more of the Judgments . . . ." [Dkt. #77-3, at 16, ¶29(b)]. More specifically, the parties' settlement agreement provided that "[i]f any Event of Default occurs, the Trust may reinstate the Lawsuit pursuant to the district court's retention of jurisdiction, file and record the *Judgments*, and pursue collection of the amount provided in the *Judgments* through any lawful means." [Dkt. #77-3, at 16, ¶29(c)(emphasis supplied)]. The defendants clearly agreed to the entry of judgments against both of them. They did not negotiate for or demand any offset. That may be a matter for any collection proceedings that may result in the wake of the entry of the agreed judgments and dismissal of this case as the plaintiff pursues whatever assets Mr. Wiens or Transnet might have to satisfy the judgments they agreed would be entered against them.

8

## CONCLUSION

For the foregoing reasons the plaintiff's motion to reinstate this case and enter the judgments the parties agreed would be entered should the defendants default on their obligations under the settlement agreement [Dkt. #77] is granted.

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

**DATE:** 9/8/16